The first argument scheduled for this morning is in the case of United States of America v. Ronald W. Repak. Mr. Lyon. Good morning, your honors. Timothy Lyon on behalf of the appellate, Ronald Repak. And with the court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you, your honor. As the court is aware, this case raises a number of issues on appeal, and I wanted to move first towards the... Let's start with the McDonald issue, if we could. Because I'd like you to help me with how McDonald helps you hear how it applies to the facts of this case. And also to inquire just whether you are invoking it in connection with your sufficiency argument or in connection with your argument relative to jury instructions or in some other way. McDonald was a Hobbs Act case in addition to a number of other federal bribery cases. McDonald was a Hobbs Act case in addition to some other federal bribery statutes. 1951 and 666. I'm sorry, McDonald was. We have a 1951 case here, and there needed to be a determination in order to convict Mr. Repak once McDonald comes down that he had at some point agreed to accept something of value in exchange for some specific act that he was going to perform. A specific official act, thank you. In this instance, the charging document, the indictment, accounts three and five, refers to these official acts as the facilitation of the Johnstown Redevelopment Authority contracts. And so that's the official act that we need to deal with. And in this setting, and given the record in this case, those I don't believe established a trial. The only real contracting issues that came up. Well, isn't that exactly how the government tried the case? That is, that what Repak was doing was to, and what the contractors were providing to him was to assure that there would be ongoing business relationships between the JRA and these contractors? I don't believe so, Your Honor. That was the testimony. That's what the testimony was, that they were concerned that if they didn't do the roof, or the excavation, or the steelers tickets, or whatever force is acquitted on those, that they wouldn't be getting any more business out of the Redevelopment Authority. The way I was interpreting their testimony was that they were establishing first when they began their relationship with the JRA. So it would have been sometime well before the conduct at issue here. And then it was just testimony about items they provided to Mr. Repak, including the roof, including the demolition service, including the steeler tickets. And they believed that they needed to provide that, but there wasn't any discussion about anything really about ongoing future contracts. Should have was. There were witnesses who testified about the concern that they would not get future business. You're suggesting the record doesn't show that? I believe that's what they testified to, but there wasn't any evidence of what these future contracts were when they were coming up. It doesn't matter. If their concerns, they've got an ongoing business. I think one person said 60% of his E&D at an excavating company, 60% of his business was with the Redevelopment Authority. Why would it matter whether or not at the time he gives the gifts to the client, he has a specific contract that he might not get in mind, or he's just concerned they're ticking off Mr. Repak so they won't get any more contracts at all? Sure. I think for two reasons. McDonnell talks about the Official Act having to be specific, focused, pending before the governmental official, and we don't have any testimony. Why does it have to be pending? I give someone a gift because I'm saying if I don't give them a gift, I'm not going to get any more business from that municipality. And the person who I give the gift to is in charge, and you can argue the person's not in charge, but basically the person's recommendation goes a long way toward my securing contracts with that municipality. I don't know what contracts, maybe to build a new football stadium, maybe to fund schools, although if I'm going to build a football stadium before I fund schools, whatever the contract is, I'm going to make sure I get a piece of that action. What is it in McDonnell's that says I have to know if it's a football stadium, or schools, or paving the road, as opposed to just the official action of him exercising his responsibility? I think it's just the language itself that says it has to be specific and focused. But it is specific and focused here because it's a government contract through the JRA, and it is specific. And each one of these witnesses testified about contracts they received, largesse they gave, and an expectation that if they didn't continue to do so they would be deprived of it. In addition, the evidence showed that they had an increase in the amount of business they got with the JRA. So why isn't this record sufficient to demonstrate that which you say McDonnell's requires? Don't think it's demonstrating a particular contract or a particular item that would be covered in funds. That was the question that we just asked. She's suggesting that a particular contract is not necessary. The governmental action is making sure that contracts keep coming to a claim. That's the action. Not a given contract, but contracts, or a contract, whatever indefinite it may be, just to make sure that he's not dealt out of the municipality's business, the redevelopment authority's business. Why isn't that specific enough? That was her question. It's what I had been trying to ask you also. Certainly, and it may just be one of these issues where I read McDonnell is requiring something more definite, like a contract for the building of this particular... But that's wrong. First of all, you inaccurately, or at least only in part, declared a few minutes ago what McDonnell says, and I'll give you the language. It must also be something specific and focused that is pending, that's what you said, or may by law be brought before a public official, or may by law be brought before a public official. That speaks to the future tense, doesn't it? It does, Your Honor, but I still think it requires this level of specificity. How can you specify something that hasn't happened yet? Isn't the question about specific and focus that was asked by Judge Schwartz suggestive that future contracts of this nature are sufficiently specific and focused? If that's the concern of these contractors, continuing business. If it doesn't have to be pending, and it's something that would happen in the future, but is so far in court, how could you have anything specific and focused? Until, perhaps it would have to be until the contract is announced, or that there is a need for it. Any other questions on McDonnell? Well, just on the jury instruction issue, because we've been, I think, talking a little bit more about sufficiency, you agree that getting a government contract is an exercise of governmental power, correct? No. That is not an exercise of governmental power. At least my interpretation under McDonnell is that McDonnell talks about an official act being something akin to a lawsuit or a hearing before a committee. Or an administrative agency. Or JRA is. A determination in front of the agency. Would you at least agree that the only conduct at issue in this case is the awarding of the contracts? Again, I apologize. I have a feeling it will frustrate you, but I think my answer... If you have a different view, I just want to know whether you agree with that or not. Because this is not McDonnell. We're not talking about meetings. We're not talking about introductions. We're talking about contracts. And that's the only evidence and the only thing charged. Do you agree with that? I agree that it's the only thing charged, but I think there were two other aspects that the jury could have focused on that it appeared Mr. Repack had authority over. The government witnessed the Monsignor vault that testified that it was the board. That made these contract determinations. But two other government witnesses, this William Meske testified that Mr. Repack was responsible for approving invoices under the contracts. And Frank DeTore testified that Mr. Repack was responsible for working out what they called work orders, which were signing work under the particular contracts. And it's possible that the jury would have thought that those were the official acts that were involved when we're talking about the jury. Those are different than exercising the authority under the contracts. Different than facilitating the award of contracts. And that's how the indictment leads. It talks about facilitating these actions, doesn't it? Facilitating the award of contracts, which I believe is different than authorizing payment under contracts. I don't think the people who are engaging and who are doing the work would view it differently, right? They would view it all as like, please pay me for the contract you've given me. And so I think that a reasonable person would see that as one continuum. Would you not agree with that? I do think that they're different. Let's move to the 404B matter, which you also raise. First of all, just to clarify matters, indicate specifically, if you would, aside from the affair evidence issue, what is the evidence here that came into the record that you believe was improperly admitted under 404B? Yes, there was evidence that came in about tickets other than Steeler tickets, concert tickets. I believe there was a Britney Spears ticket that was referred to. There was also evidence that Mr. Repack had obtained a tent for a family event, a hog for, I believe, his son's graduation. From who? I mean, from the vendors in this case. From who? The vendor in this case, so like L&M or EADS. There was also evidence that there were charity golf outings that were purchased. Those would be, other than the affair, the prior act evidence. And what do you understand to be the government's theory of admissibility here for a purpose under 404B? Knowledge and intent? Knowledge and intent was their articulated proper purpose. But for the Step 2 analysis, the government doesn't appear to have done anything other than to say these are relevant to knowledge and intent. So you think their proper was simply conclusory? I do, Your Honor. And what about the District Court's analysis? You keep going. Thank you, Your Honor. We'll give you plenty of time. I believe the District Court was pretty much saying what the government was saying. The government has identified these as relevant purposes. They say they go to knowledge and intent. They say that these are prior, uncharged bits of conduct. And that's relevant to the case at issue, so. You're saying it wasn't a District Court analysis? Because the question was, what was the question analysis? I think that's what it was. It was a rehash or a repeat of what the government said. In fact, the District Court did not even cite to this Court's most recent precedents involving 404B, Caldwell and Brown, and went on to describe the approach that is taken under 404B as being inclusionary as opposed to exclusionary, right? That's absolutely correct, Your Honor. Which is contrary to what Brown and Caldwell have said. That's correct. In fact, the way I'm viewing that is the Court just didn't have even the right starting point. All right. Let's say all that's true, and it would seem to be true from my reading of the record. How is there any unfair prejudice ultimately here under 403? The government used those prior acts to establish Mr. Repack's intent. And it's clear from the government's closing. The prosecutor says, how do we prove intent? Well, the other acts. And she starts listing some of them. And she does it for each one of the offenses. And I think the impropriety of it here, and the reason Mr. Repack is prejudiced, is because the prior act evidence doesn't shed any real light on what was going on. I think it raises the same question that was involved in this case. It's not disputed that Mr. Repack got the roof. It wasn't disputed he got the tickets, or the tent, or the hog. The question is, what was his knowledge? What was his intent? And the same problem was in the prior act evidence. But doesn't that prior act evidence give a context within which the vendors understood the course of dealing with Repack? Doesn't it shed light on his operation, the way he did business, so it would make clear what the understanding was when Mr. Repack asked for something, what the expectation would be so that the business dealing would continue? So doesn't that provide the background and the understanding of why the vendors understood what his intentions were when he engaged with them on the roof? And otherwise, the jury would have no reason to understand all of that. Wouldn't you say that that was a helpful purpose? Partly. I think it shows the history of the parties. It shows more than that. Let me ask Judge Schwartz's question a different way. Because people often take a very crabbed look at 404B. And when we're talking about knowledge and intent, the rule doesn't say it has to just be a defendant's knowledge and intent. It may be the knowledge and intent of various people relevant to the transactions that are involved. And here, as Judge Schwartz's question suggested, why wouldn't this be relevant to showing the intent of the vendors and how they acted in these transactions with him and the JRA? They didn't just give these things. They weren't just gratuities. They were concerned they were going to lose the largesse that came from dealing with Mr. Repack and the JRA. Isn't that what the records show? That's what they testified to. Would it have been helpful if the government might have made that explanation to us rather than my have to do their job for them? We could consider it. And that was, Your Honor, my further response was to be that I believe we're reviewing Judge Gibson's exercise of discretion. I don't believe that was sort of in anyone's mind. That wasn't part of the arguments that were put forward. But I also think that even those considerations tend to run afoul of the idea that we can't have a link in the chain that's not a propensity purpose. Would your argument be different if the government rationale for offering the evidence was we're evidence, this is how he did his business rather than intent and knowledge? Would that change your argument? If the government would have provided sufficient connections between the prior acts and what was going on at the time there and what was going on under the offenses that were alleged in the indictment, I think that that would be sufficient. But the problem is they haven't done that. They didn't do that. And even drawing that connection, the modus operandi, I mean, I think it should be noted that there's nothing criminal in the act of soliciting something or asking something. These offenses still require that the defendant do it with the knowledge that he's going to do a specific official act or that he's intending to be influenced or rewarded in connection with some sort of business activity. And that was never shown even in the prior acts. So to say that would it be sufficient if it was part of the defendant's modus operandi if they could draw all the connections together? But just showing that at some point in the past he had asked for a particular ticket or this or that when even these vendors who had provided them, the one, Mr. McNulty acknowledged that he at one point didn't give Mr. Repack a ticket and nothing bad happened to him. He didn't lose any business. He was never threatened to lose a contract. The same thing with Mr. Seawalk. He talked about innuendos, but he never talked about innuendos necessarily in regard to the contracting process or the roof. Let's discuss the affair evidence that came in. Wasn't that entirely relevant to explain why certain gratuities were offered to or for Ms. Walters? No, Your Honor. And wasn't there testimony from at least one witness that he was aware of the personal relationship between her and Mr. Repack? There was one witness who said personal relationship. That was exactly the language, yes. That's correct. But there was no witness who said that they had a romantic or a physical relationship. She didn't testify to that? Other than Ms. Walter. It was all over the record in this case, right? She is. And there were perfectly legitimate reasons for it being in the record. That is admissible reasons for it to be in the record. Is it the real issue here for you? The real issue as to the affair evidence? The invocation of it and the manner by which it was done by the prosecutor in the closing argument? That's certainly a main focus, Your Honor. All right. And that gets to the prejudice, I believe, that results from admitting this evidence. There's two different questions. That evidence may well be admissible, I tend to believe it is. But the fact that evidence is in doesn't give you carte blanche in terms of the closing argument and what you do with it, does it? Thank you. No, I don't believe so, Your Honor. When you start conflating the two, whether it's admissible or whether or not the use of it in summation was proper, to me that gets pretty messy. It blows the lines, as the prosecutor argued here. So let me just focus, at least in my mind, let me just focus on the use of it in the closing argument. Not whether or not it was admissible. Assume it's admitted properly and then focus on the closing argument and how it was used to refer it to. Sure. I think we have a principle that prosecutors aren't to attempt to inflame the jury's passions or have them sort of hate a defendant as a result of something that isn't crucial or focused in the case. The fact is that... I'm not sure you need that last phrase. It's crucial in the case. I don't think it's allowed to inflame the passions of the jury. That's very telling. In fact, in the government's 28-J letter, the Bailey case that was cited, I mean, clearly the video of that killing. Well, I think, I hope that you can tell from the tone of that opinion, in particular the footnote that's in there, that that's not a real great case in terms of supporting the government's position. It's not a harm and serve case, but clearly Davenport was frowned upon by everybody on that panel, and they said so. And I think in this case, the government also went too far by hammering home this notion that the rules just don't apply to Mr. Rapak. And she repeated twice this notion that, you know, so I'm faithful to my wife. I'm not faithful to my wife. I'm faithful to my wife. I'm not faithful to my wife. The rules don't apply to him, even in his personal life. Well, to say the rules don't apply to him, I'm not sure that's their own proper. That's kind of endemic in the fact that he's being indicted and tried for violating the rules that should apply to him. And clearly, the rules don't apply to him. The evidence shows the rules don't apply to him, because the evidence shows he breaks the rules. To me, that's very different than making a morality argument and showing that the portions are not. To me, that's very, very different. Or maybe I'm distinguishing something that has no difference. But it's one thing to say that the rules don't apply to him. The evidence says the rules. It shows the rules don't apply to him. To me, that's endemic in every single argument in a closing by a prosecutor. But to go further and say, no, the rules don't apply to him, but he's an immoral character. And maybe a juror can make that leap in his or her mind. But for the prosecutor to come in and say something, that's what I'm trying to get your focus on. I do. I believe that crosses the line. You said that we can take anything from the fact that there was a split verdict, that the jury followed the judge's instructions. It says you can't let sympathies and passions overwhelm you in your decision making. You have to base it on the law and the facts. Should we take anything from that? We have to acknowledge that the judge said that. But I also think the counts that Mr. Repack was acquitted of involved the stealer tickets. And the vendor or contractor in that instance was very clear in his testimony that he didn't think anything improper was going on. He didn't feel pressured. He didn't have anything. He was a different guy than the other two individuals. He was a marketing person at a multi-million dollar company, or a company that had multi-million dollar contracts with the JRA. So he was a different person. And I agree, he had a different perspective on things. And I think the jury could have just said, look, there was nothing shady going on there. But if we think something might be going on here, we have now two versions of testimony to consider. We've got the purported victim's testimony, and we have Mr. Repack's testimony that were contrary. Whereas with the stealer tickets, they weren't contrary. Well, he was made to say, hey, they ain't buying council free stealer tickets. What part of you? I wanted to say that, Judge. Brown's tickets on the other hand have no retail value whatsoever. And yesterday demonstrated that even further. Well, he did not encompass mentions. And he shook somebody down for Brown's tickets. He's a Brown's fan. Understood. Putting aside whether or not the prosecutor crossed the line in the reference to the affair, the infidelity, you really think that that was of such weight that it could reasonably have affected the jury's verdict here? I mean, I don't mean to editorialize. I'll say no more than this. But after the year 2016, I wonder if people are capable of being shocked by anything anymore. Really. Is it that shocking? An affair? A workplace affair? I believe so, Your Honor. And that was the reason I believe the prosecutor emphasized it so much, was to get that sort of effect. And also, this was a case where the credibility was the real issue. There wasn't disputes about, did the roof happen? Did the demolition work happen? It was, what was going on in Mr. Repat's head? And when you've got the affair evidence and then you have what I have as my second misconduct in closing issue, where the government says, hey, this witness was going to testify for us, and he has the nerve to get up there and tell you, again, she's going right at his credibility. I think you opened that door. If I could just ask one further question on this subject, in the defense summation, essentially the argument was, I can't wait to hear what she's going to say about the affair evidence again in the rebuttal. Aren't we talking about an invited response on the government's rebuttal summation on this subject? Because there was an appropriate response by defense counsel, of course, to what the government said initially. But then, aren't we just inviting the response, like, I can't wait to hear what she's going to say next? And she did make a brief mention about, I believe, referring to Ms. Walter as Mr. Repat's mistress. But that was after, I believe, the cat, so to speak, was out of the bag. I still maintain that the evidence shouldn't have come in. And even after it comes in, I still maintain that the government's initial use of it, and its closing, was improper. All right, but we understand your argument, and we will have you back on rebuttal. Okay, thank you. Ms. Irwin. May it please the court, Laura Irwin from the U.S. Attorney's Office in the Western District on behalf of the government. Ms. Irwin, could we begin with the McDonald issue, as we did with Mr. Lyon? And, you know, I'm still not sure I entirely understand how the judge is going to do that.   can. How the appellate here has invoked McDonald and is attempting to use it. But maybe you can clarify that, and at least we understand what the government's position is as to why it doesn't help the defense. Well, I'll certainly try, Your Honor. With regard to the jury instruction issue, remember this is an unpreserved issue. The parties agreed on the jury instruction. The McDonald didn't even, the McDonald decision, I think, by the Fourth Circuit came down the very day of the verdict here. So it wasn't even out there to be charged. That's correct. The other point to remember as we investigate this issue is that when this case was tried, there was never a dispute about whether there had been an official act. There was never a dispute about whether a contract, a specific contract had been entered into. The issue was Mr. Repack's state of mind. Could we prove intent and an agreement? So these issues weren't even in play. It's an agreement. Right, that he had an agreement with the vendors, as Judge Smith talked about earlier, that we had to show their state of mind as well, that they agreed that they would do these steps in order to continue to receive contracts. But just so you're not suggesting a higher burden than you actually have, the case law is clear that you don't have to prove an explicit agreement in any event. Exactly. It could be a wink and a nod. It could be understanding. Correct. Correct. So our position is that there's no plain error here with regard to these instructions because the issues really weren't in dispute. With regard to McDonald itself, even if that instruction had been given, we believe we would have satisfied it. There's really no dispute that Mr. Repack was acting as a public official and I can detail that evidence from the record. With regard to whether this was an official act, I think the indictment makes clear that we're talking about contracts with the JRA, construction contracts with the JRA. If you look at McDonald, the Supreme Court said the kind of too broad of matter or issue was the jobs for Bob's, you know, the governor wanting to bring employment to his state. When the case was before the Fourth Circuit, the Fourth Circuit went in a little bit deeper to identify what those could have been and they found at least three questions or matters and I won't read through them all, but one was whether researchers at any Virginia state universities would initiate a study of the drug at issue and it's our position that the facilitation of contracts of the JRA, construction contracts, is essentially the same thing as this. It's specific. And that's how you charge it. That's the facilitation is how the indictment reads. And that's what was read to the jury in the preliminary instruction, at the closing instruction, within specific days did these things happen and there's more than ample evidence that those things did occur. Each vendor testified about the amount of money they made each year from the JRA. There was no indication that their work ever stopped. In fact, they talked about, you know, currently what their monies were, what they were in specific years. So there's no doubt that the contracts continued to come in from the JRA. It seems like the big difference is I read it and the Supreme Court didn't use this language, but the things in McDonald's that raise the issue of whether or not it was an official act were really in the nature of constituent services. You try to help our constituent. You arrange a meeting. You afford them access. That's not an official act in the sense of criminality, whereas here you've got something specific like the contracts that go beyond constituent services. To that extent, arguably McDonald's not that helpful for that type of case. You know, the next case, like Governor McDonald's, may not be much easier. But certainly in our instance, the indictment was clear about what we were talking about and there was never a dispute. In fact, there's ample evidence to support it. Why didn't you? You've got the concert tickets, the tents, the hog for roosting for the son's graduation, golf riding. Why were not those charges part of the indictment? I wondered the same thing. I personally don't know the answer to that question. I would only be assuming. I'd be glad to speculate for you, but I actually never thought to ask. One of the things that keeps in my cynical little mind is the one reason you might not want to charge it. You've got a couple of things you can prove without any doubt. You've got some other things you can throw up against the wall. Let's charge these three things and we'll get all this other stuff in under 4-4-B because we all know that nobody listens to what the 3rd Circuit says about A&M. Why don't we just throw it all against the wall and some of it will stick. But we'll get the jury to understand this guy is just a bad guy when it comes to the way he does the business of the Vietnam War. Why isn't that a perfectly logical explanation of the way this thing was charged? Otherwise, why wouldn't you charge them all? Well, there's a lot in what you said, Your Honor, and I believe probably the most direct answer would be, and again, I did not ask this question, so I really don't know, but my guess at all has to go to other things, not just all the things that you're suggesting might have happened, but availability of witnesses. Availability of witnesses? I'm sorry? Availability of witnesses. That's the point that your colleague was making to the judge. It's the same time frame, same parties. That's some of the arguments you're making. Except for Kimball's, they're the same entities, right? That's true. That's true. You should ask a few more questions of him. My only response would be, that I can think of at this point without actually knowing the answer, is that we try to limit our indictments and not to pile on. Not to pile on. Well, I don't know where to go with that. I think we've segued very nicely into the 404B issue here, Ms. Irwin, and as you can undoubtedly tell from Judge McKee and my reaction, that the 404B issue here is a source of frustration. First of all, I'd like to ask you, if you think that, and the 404B issue was handled by way of motion. I don't think it was argued in open court. I think it was handled with a written motion and response briefing. Then the court ruled in a brief opinion. Do you really think that your office set out specific reasons for admissibility under 404B? They're consistent with what we have strived to say in Caldwell and Brown in recent years. I believe we try to do our best, Your Honor, and I believe in this case we did set out a I don't. Let me ask you this. Do you think the district court, in reasoned fashion, whatever you think about the government's motion, do you think the district court provided a reasoned and detailed basis pursuant to 404B in allowing the admissibility of this evidence? Again, Your Honor, I think that the district court did do that, although in minimal fashion. Can you expand on it then? Because we'd like to hear your views of the 404B. In fact, let me ask you this, because I've asked the question this way in other cases where 404B is an issue. Pretend we're the trial court. Make a 404B proffer to us as to what relevancy, and that is always the bull star, what's the relevancy to some stated allowable purpose under rule 404B? Here I assume it's knowledge and or intent. It is knowledge and intent, Your Honor. And our position is that by the issue in this case was getting inside Mr. Repack's mind, his state of mind, and to show state of mind, often the only thing we are left with is conduct. And we try to introduce conduct to allow the jury to draw inferences from that conduct. And in this case, we wanted to introduce the evidence to show knowledge, intent, to show that these parties had a way of relating to one another, a mutual trust. That's a different response. To show the parties had a way of relating to one another wasn't anything that was proffered before. You're talking about knowledge and intent. It seems to me you're saying that we're going to show intent by showing that he did this stuff before, before he probably had the appropriate mens rea when he did it the next time. Perhaps I misunderstood Judge Smith's question. I thought that he wanted me to explain as if you were the district judge. I didn't rely on what the AUSA wrote. I'm effectively asking you to do what I don't think the trial attorney did here. Well, that would be our position then, that it shows this level of mutual trust, which is a non-propensity link, and therefore it's relevant. I understand that those exact words may not be in what the AUSA submitted to the district court, but our position is that it's sufficiently explained when she talked about course of conduct in her pleading, specifically at pages 125 and 126 of the record. And then the district court took that information and also, we realize that he did not cite the cases that are the most recent on these topics. To the government's credit, you did in your motion. That's correct. In your papers. We can always be better proponents. There's no doubt about it. We are striving to become better proponents of 404B evidence. The district court, again, we have no control over what they have said. And in fact, I think in the Davis decision, Judge Smith, you pointed out that in that case, the AUSA did say, could we have more on the record? And it didn't get us very far. No harm in trying and continuing to try. In this case, the district court took what we had, and we believe in his opinion, which he did articulate, maybe not in the level of detail this court would like in every case, but did articulate that there is this course of conduct between the parties that's necessary to show state of mind. He even said that 404B is inclusionary as opposed to exclusionary, which is something that we tried very hard to knock down in Caldwell and Brown. Although, if there's the district court, there's still third circuit precedent out there. But long ago, which Brown and Caldwell were intended to try to explain by way of the specific language and structure, I know the crew's opinion. And beyond that, at the very best, it's no more than dictum. I certainly appreciate your opinion, Your Honor. And I don't want to argue with you on a point that I think that is well taken. I would have said what Judge Schwartz said, but I wasn't sure if there was a question actually pending. Well, you cited, I mean, the government cited the crew's opinion. But again, we've tried hard to explain the current condition of Rule 404B. If I could stay on the 404B, but go to the 403 component, unless you folks wanted to talk further. One of the things that I noticed in the district court's opinion was the recitation of basically the 403 language without the balance following. Could you, again, following Judge Smith's prism, to tell us how the 403 balance should have been demonstrated on the record? Again, in our pleading, we did set that out. In the district court's pleading, again, he truncated it. And part of the problem appears to be- It was conclusionary. It was really nothing more than conclusionary. Without the rule, as it usually happens. He said, this was because the issue played a more time-defying design. And then the court would come in and say, oh, this is the principle of the 404B, because it goes to plan, design, intent, mood, and spits out the rule. And that's it. With all due respect, Your Honor, there is tension between two things that I'll rely on. One is that a lot of the words and the concepts for the relevancy and the balancing tend to overlap. And it's very, very difficult, I think, to separate those. Well, what if you dig deeper? What if you don't- What if you don't have the same legitimate inferences as it required, and you don't do the 403 balancing? Then what happens? Well, obviously, it presents a problem for this court's standard of review in terms of how much deference is afforded the district court. Again, it's our position that the district court did that. But going back to my second point, there's this body of law that we talk about in sentencing as a way that I often think of this, is the importance or the lack of importance of magic words. The court has made it clear that we're not going to require magic words in sentencing that, yes, I look precisely at this argument made by the defendant, and I reject it for X, Y, and Z arguments. We don't require that level of specificity. And now we've got this trend in 404B that says, you need to explicitly tell us what's going on. And a district court may think, well, I'm citing the rule. But we specifically say you can't do that. Telling us what's going on in your mind, Judge, does not mean spit out the rule that we can read just as well as you and tell us it's admissible because under the rule it's admissible. I understand your position. The point I'm trying to make only is that it's oftentimes contradictory for a district judge to understand where it is that that much more information is wanted. With that said, I don't know how your prior opinions could have been any clearer on that point. I don't either. To tell you the truth, I'm really certain we don't appear clear because no one seems to understand them or have read them, unless I get cited on them. But as I said in the sentencing in which you're going, it's like the tree that falls in the forest that nobody hears. I mean, it's out there, but it might as well not be there because nobody takes any notice of it. Could you give us your 403 balance? If you were making and we had to specify designation, that must be PA. Again, what would your argument be? We have to climb inside Mr. Repack's mind. It's his state of mind. And we don't, the only alternative available to us in this case is his conduct from which the jury can draw inferences. We got evidence from two witnesses. He denied any witness there. Bury the invoices. Just bury the invoices. Now, what more evidence do you need than that? And what's in his mind is he gets a roof for $34,000. You're burying the invoices. He gets something else. Try to make grand and bury the rest of the invoices. But in order to show what his real intent was, we've got to talk about the Britney Spears tickets to the golf outing and the roosted pig, which... And I'd like to know who would ever want tickets to a Britney Spears. Well, I'd go with Jerry Seinfeld. You don't like the Bruins? You don't like Britney Spears? You don't like any of them? No, no, no. I like you. Judge McKee, the response to that question is, is we face the burden of showing beyond a reasonable doubt that this man had the intent to undertake these acts. And the tools are available. The federal rules provide us tools that are available to do that. And to face and sustain that highest burden, we feel that we should be able to use the tools that are available to us so long as we do so properly. It's very circular. Looking at the 403 issue here and recognizing certainly that this is the district court's responsibility to articulate, our jurisprudence is such, and we've stated this in the Scarfo opinion, that if ever there is an instance for judicial self-restraint, meaning by us, and this is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal. In other words, district court, give us your reasons. Just give us an analytical assessment. And we've got to defer to you. You're there. You know. That's what we're not getting. And again, I understand it's not the prosecutor's job to enunciate that balancing. It's the district court's job. I'm pleading, though, that anything you can do to help along the way to make a record that allows us to engage in that kind of highly deferential review would be appreciated. We could be better proponents. Could we ask some questions about the... I know you're out of time, but... No, no, we have plenty of time. All right. I'd like to turn our attention now to the affair evidence. The use of it at summation, specifically the government's opening summation. So I want to just orient you to where we're going, because we'll assume that it was properly admitted and that it's appropriate to comment on properly admitted evidence. Thank you. Okay. So we're going to get there. The Judge McKee talked about how rules don't matter. Sometimes he follows rules. Sometimes he doesn't. I was going to say, sometimes I follow rules. No, no, no, I'm sorry. The key one we're going to hear is... She's my friend. He follows rules almost always. And within the government's summation, there is this repetition of this phrase, I'm faithful to my wife. I'm not faithful to my wife. I'm faithful to my wife. I'm not faithful to my wife. That's the government's summation. Your brief, however, ellipses out the second I'm faithful, I'm not faithful, which suggests that somehow you didn't really want us to see the repetition of this. Am I supposed to take from that? You think that's problematic because the way the brief is written, it doesn't identically repeat what was said in summation, which we know your adversary is most concerned about. I understand, Your Honor. Our response to that, and I will specifically address the ellipses. The point the prosecutor was trying to make in this comment was to draw to the jury the issue of Mr. Repak's credibility. She had started several pages earlier at about page 606. She said, let's talk about Mr. Repak's credibility. And she went through various things to attack his credibility. Then she came to this issue. And recall, Debbie Walter testified when asked. There were seven questions asked to her about this affair. Was there an affair? Yes. When did it start? A number of years ago. When did it end? Four or five years ago. Mr. Repak, when he was questioned, he said, well, it was on and off. And then he gratuitously added, and this is at page 514, I'm not going to say that it was long term. And that's at page 515. At this point in the closing, the prosecutor is trying to draw the jury's attention to his statement that it was on again and off again. And that's why that, in addition to the word limitation, I did not repeat it. But our position is that was to draw the jury's focus to his own credibility. That's a restatement of his words. I'm faithful to my wife. I'm not faithful to my wife is a paraphrase of it was on and off. And why is the discussion of this affair not trying to draw to the jury's sensibilities about fidelity in a relationship, as opposed to the evidence and his conduct vis-a-vis the JRA? Because she's drawn it in through her previous statements. And as she continues after this, with the instances of Mr. Repack's conduct at the JRA. And I gather from your position in the briefing that because there was no objection to the way it was used at summation, we're in plain error. And this in no way, from your point of view, substantially interfered with the just result. That's exactly right. We had an experienced, very well-experienced defense attorney who saw nothing, nothing wrong with this, did not object. So we are in plain error. Was trial counsel Al Lindsay? Yes, it was, sir. Well, the way to argue there's reasons, it's not for us to get into. But you might not want to highlight that kind of testimony by objecting to it. Even by reversing an objection to sidebar, which a lot of judges would go bananas if you went out to declose an argument to say, well, I see you're on the sidebar. That might be a real good way to incur the wrath of a judge. Well, and in the rebuttal argument, government counsel actually kind of receded a bit on this point, didn't she? She did. I had the impression it had even sunk into her that maybe she went a little too far. Perhaps. But keep in mind, she was also responding to the rotten dead fish comment. Yeah. And like I said, it was done on rebuttal. But the initial statement that my colleague mentioned to you, and then the last sentence of that was, yet another example of the burying of what is permissible, even in his personal life that you heard about. That's just, to me, that's insistent. Let's just throw everything against the wall and see what's fixed. It started with a couple of things, and we'll get everything else under the Trojan horse of 404B. Just load it up. No doubt those are inartful statements, Your Honor. But it's our position, particularly under plain error review, that it does not amount to prosecutorial misconduct. Yes. Can you ever see a point hypothetically? Forget about whether or not this is an appropriate case. But you ever see a point, hypothetically, where one or two things are specifically charged in an indictment as a crime? And once you get that before the jury, then you use 404B to get in, and you pick a number, 50, 75, 100, 5, 10 instances of prior bad acts to bring to the jury's attention. And you argue that, well, this other stuff is necessary because it's essential proof of the elements of the crimes charged. Can we ever get to a point where the number of prior bad acts compared to the few things that are specifically charged is just so out of proportion that it raises a new process issue? I think that's very possible. I don't think that happened in this case. And in fact, I don't understand Mr. Repak to make the argument that there was too many of these. His argument is you shouldn't put any in. But I agree with you. There could be a case in which that would happen. Okay. Other than my request that the court affirm the judgment of the district court and my promise to advocate being better proponents for anything else I can do for the court today. If you could find somebody to remove all the ice in my house back in Altona, that would be appreciated. That sounds almost like something Mr. Repak would have to say. Actually, I wouldn't request anything in the spot. Thank you very much. Thank you. Thank you, your honors. I wanted to get back into this idea about plain error and the government's summations. There was the question that do we think it was enough that it would have interfered with a just result? And I think when we look at what this case was about and the credibility for Mr. Repak and what was going on in his mind, and we do see what I believe is improper argument regarding the affair. And then the second instance, I believe, and I know, and I'm sorry, I can't remember who I think it may have been. Judge McKee had said that they thought it was appropriate to say that this witness would have testified. And he has the nerve to come up here and say that she ordered the fruit platters or the cookie trays. I do look at that as her bringing in instances of facts not in the record and her essentially commenting on his credibility. I suggested that the defense counsel opened the door for that. I didn't suggest that. I think they did. I think the defense counsel did open the door for that. And my point would just be that I don't know they can open the door for the admission or the indication that there would be evidence that the jury didn't hear. But they can, but it's appropriate to let the jury be informed that they can judge whether that explanation is credible without suggesting that the lawyer is talking about outside the record evidence. And that's really the way I read that comment. Was simply, does this sound credible, ladies and gentlemen? You heard what this woman's job was. She was the receptionist. You know what his job was. You heard all the things he did. Is this credible? So why is that improper? I guess I didn't read it that way at all. I was reading it as, you know, she was going to be our witness. She was going to testify for us. And then he gets up here and tells you that she was the one who did it. And I think there are other ways to say, you know, are you really going to buy this from him? That she was the one who did it? I mean, look, he's asking for Britney Spears tickets. He's asking for this. He's asking for everything in the world. Of course, it wasn't her. There's no way that could be the case. This is not evidence, however, that can be characterized as inflammatory. And even if, as you say, it was something that was introduced improperly or incorrectly, I have a hard time understanding how you think this would have resulted in some kind of prejudice that would have been determinative here. As to what the jury ultimately did. I would agree with you, Your Honor, that it's not inflammatory in the same way that the affair evidence was inflammatory. And if I gave that impression for my brief, I didn't intend to. I think, in my mind, it's just a way the government attacked Mr. Repak's credibility when this case was predominantly about credibility and what was going on by essentially putting on what I believe was testimony from a witness who didn't testify. And I see that as a big deal. We understand your position. Thank you, Mr. Warren. Thank you, Your Honor. Thank you, counsel. We appreciate your very helpful arguments and we'll take the case under advisement.